UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| KENNY H. CHO, | ) | |
| | ) | |
| Petitioner, | ) | CASE NO.  C06-265-MJP-MJB |
| | ) | |
| v. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| SANDRA CARTER, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Kenny H. Cho is a state prisoner currently incarcerated at the Coyote Ridge Corrections Center in Connell, Washington.   He seeks relief under 28 U.S.C. § 2254 from his conviction in King County Superior Court in 2002 on a charge of rendering criminal assistance in the first degree. After careful consideration of the record in its entirety, the Court concludes that no evidentiary hearing is required and recommends that petitioner's federal habeas petition should be DENIED and this action should be DISMISSED with prejudice.

//

//

REPORT AND RECOMMENDATION
Page - 1

## II.  FACTUAL AND PROCEDURAL HISTORY

A.    Background Facts

In an unpublished opinion issued on July 12, 2004, the Washington Court of Appeals summarized the facts related to petitioner's conviction as follows:

> Joseph Garcia was 14 years old when Kenny Cho initiated him into the Rolling '90s CRIPS gang.  By July 1999, when Garcia was 16, the Rolling '90s  had a rivalry with the Hoover CRIPS that Garcia described as a "battle toward each other."  On July 30, 1999, Garcia was with several members of the Rolling '90s–but not Kenny Cho–when they met some Hoovers in Westway, and a fist fight broke out.  The group dispersed when Garcia fired several shots at the Hoovers, hitting one of them.  Cho subsequently learned about the shooting and the fact that several Hoovers were looking for Garcia.

> On the evening of August 2, Garcia when riding in Cho's car along with Sam Turner and Ryan Rodgers.  After receiving a page, Rodgers asked Cho to drive to Westway so that Rodgers could complete a drug deal.  Wanting to avoid the Hoovers and Westway because of the July 30 incident, Cho initially refused, but Rodgers persuaded him.  When they arrived at the same block where the July 30 shooting took place, Rodgers got out of the car and went into an apartment building, leaving his gun with Turner.

> As Cho, Garcia and Turner waited in the car, several Hoovers gathered around.  One of them, known as "D-Ray," came up to the car and began pounding on the driver's window, shouting for Cho to get out of the car.  Because the windows were tinted such that people inside the vehicle could see out but people outside could not see in, Cho rolled down his window slightly so that D-Ray could see him.  D-Ray, who was wearing gloves, continued shouting, and began making comments about the July 30 incident.  Cho insisted that he did not know anything about the incident.  Meanwhile, Garcia crouched in the back seat, hoping that D-Ray would not notice him.

> When Rodgers returned to the car and opened the rear passenger-side door, Sam Turner, who had been sitting in the back seat, leaned his upper body out the car door and fired one shot from the gun that Rodgers had left with him.  The bullet struck Eric Solier, who ran away without realizing, at first, that he had been wounded in the arm.  Turner and Rodgers got back into the car, shut the door, and began yelling at Cho to drive.  Cho attempted to do so, but the car did not move, in that the gearshift was in park.  When the others in the car continued to yell at him to drive, Cho shifted into drive and drove away, without exceeding the speed limit.  The group went to a park near Turner's wife's house, where

REPORT AND RECOMMENDATION
Page - 2

they smoked pot and played basketball before going to their respective homes.  On the way to the park they passed near a fire station where police were known to congregate.  Cho did not stop to report the shooting. Garcia testified that before Cho drove away, Turner stated that he thought he had hit one of the Hoovers.

Eric Solier testified that he ran away from the scene when he heard the shot and only realized later that he had been struck in the arm.  He went to the nearby fire station to obtain help for his gunshot wound, and reported the shooting to police.

Two days later, on August 4, police arrested Cho on an unrelated felony warrant, and a detective questioned him about the August 2 shooting.  Cho denied that he had been present at the scene of that shooting.

The State charged Cho with rendering criminal assistance in the first degree by information filed September 13, 1999.  A jury found Cho guilty on January 13, 2000, but following his successful appeal and remand from this court, the trial court granted his motion for a new trial based on juror misconduct.

Cho's second trial was held July 26 to August 1, 200[2].  Cho testified at the trial that he had not realized that Turner had leaned out of the car and fired the shot; instead he thought that one of the Hoovers fired the shot at the vehicle, and he did not learn that Turner had fired the shot, and the he probably had hit someone, until later that evening.  Cho also testified that it was significant that D-Ray had been wearing gloves–this being an indication to gang members that he was armed or intending to fight.  Cho admitted lying to the detective who questioned him about the incident three days later, stating that he had been frightened either of what the officer might do, or what his own gang might do to him if he broke the code of silence required of all members of his gang.

(Dkt. #16, Ex. 5 at 1-4) (footnoted omitted).  Petitioner was found guilty by jury verdict,

and on September 20, 2002, he was sentenced to 12 months of confinement, followed by

12 months of community placement.[1]  (Dkt. #16, Ex. 2.)

//

---

[1]Petitioner is currently serving time on unrelated robbery and drug manufacturing convictions; he has not served the community placement term of the conviction he challenges in this petition.  (*See* Dkt. #16, Ex. 1.)

REPORT AND RECOMMENDATION
Page - 3

B.      Procedural History

Petitioner appealed to the Washington Court of Appeals, Div. I ("Court of Appeals"), which affirmed the judgment and sentence in an unpublished opinion on July 12, 2004.  (Dkt. #16, Ex. 5.)  On March 1, 2005, the Supreme Court of Washington denied petitioner's petition review.  (Dkt. #16, Ex. 7.)  The Court of Appeals issued a mandate on April 14, 2005.  (Dkt. #16, Ex. 10.)

Petitioner filed the present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 3, 2006.  Respondent filed an answer to the petition along with relevant portions of the state court record.  The briefing is now complete and this matter is ripe for review.

### III.  GROUNDS FOR REVIEW

Petitioner presents a single ground for relief in his federal habeas petition:

Ground One: Conviction obtained by a violation of Mr. Cho's United States Constitutional right to jury unanimity.

Respondent concedes that petitioner appears to have properly exhausted this claim. (Dkt. #14 at 10.)

### IV.  STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court ("Supreme Court"); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

REPORT AND RECOMMENDATION
Page - 4

1    question of law, or if the state court decides a case differently than the Supreme Court

2    has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362,

3    412-13 (2000).  Under the "unreasonable application" clause, a federal habeas court may

4    grant the writ if the state court identifies the correct governing legal principle from the

5    Supreme Court's decisions but unreasonably applies that principle to the facts of the

6    prisoner's case.  *Id.* at 413.  The Ninth Circuit has interpreted "an unreasonable

7    application of law" to mean application that is "clearly erroneous."  *Van Tran v. Lindsey*,

8    212 F.3d 1143, 1152-54 (9th Cir.), *cert. denied*, 531 U.S. 944 (2000).

9        Additionally, if a habeas petitioner challenges the determination of a factual issue

10   by a state court, such determination is presumed correct, and the applicant has the

11   burden of rebutting the presumption of correctness by clear and convincing evidence.  28

12   U.S.C. § 2254(e)(1).

13                              V.  DISCUSSION

14       Petitioner claims that his conviction was obtained by a violation of his United

15   States Constitutional right to jury unanimity.  He argues "there are no assurances of jury

16   unanimity because the prosecutor in closing argument sought the verdict based on Cho's

17   act of driving away, on Cho's failure to affirmatively report the crime, and on his denial

18   to detective Gordon that he was present at the scene, acts that were not a continuing

19   course of conduct."  (Dkt. #6 at 4.)  Respondent contends, *inter alia*, that the

20   Washington Court of Appeals' adjudication of this claim on the merits was not contrary

21   to, or an unreasonable application of, clearly established federal law. (Dkt. #14 at 13.)

22       The Sixth Amendment requires a unanimous jury verdict to convict in a federal

23   criminal trial.  *Johnson v. Louisiana*, 406 U.S. 356, 371, 359, 925 S.Ct. 1620, 32

24   L.Ed.2d 152 (1972) (Powell, J., concurring).  However, the Supreme Court has held that

25

26   REPORT AND RECOMMENDATION
     Page - 5

the Fourteenth Amendment does not mandate unanimous verdicts for convictions in

criminal prosecutions in state courts. *Johnson*, 406 U.S. at 359, 92 S.Ct. 1620; *see also*

*Apodaca v. Oregon*, 406 U.S. 404, 410-411, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

Therefore, petitioner was not entitled to jury unanimity under the United States

Constitution.

Moreover, the state Court of Appeals analyzed petitioner's claim under

Washington case law, stating:

> When the State charges one count of criminal conduct and then presents evidence of multiple criminal acts, the State must elect one act for the jury to rely on or the trial court must instruct the jury that all must agree which act is proved beyond a reasonable doubt, in order to ensure jury unanimity. *State v. Love*, 80 Wn. App. 357, 360-61, 908 P.2d 395 (1996); *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984). But a unanimity instruction is not required where the evidence indicates a continuing course of conduct. *Petrich*, 101 Wn.2d at 571-72. And neither is the prosecutor required to make an election when the evidence indicates an ongoing enterprise. *State v. Gooden*, 51 Wn. App. 615, 620, 754 P.2d 1000 (1988). Courts must evaluate the underlying facts in a common sense manner to determine whether the evidence establishes a continuing course of conduct. *Petrich*, 101 Wn.2d at 571. If the defendant's actions are intended to achieve a singular objective, then the evidence tends to establish a continuing course of conduct. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995).
>
> Here the prosecutor's argument regarding the failure to report and the false statement was directed toward Cho's intent in driving away from the scene of the crime and was designed to discredit Cho's alternative explanations for his actions. Each time she mentioned the failure to report or the false statement, the prosecutor described Cho's actions as "continuing" to render criminal assistance in order to demonstrate his intent in driving Turner from and scene and to refute his testimony regarding why he drove from the scene. Under these circumstances, the evidence establishes a continuing course of conduct with a singular objective – to help Turner avoid discovery or apprehension. Cho was not entitled to a unanimity instruction. And neither was the State required to make an election.

(Dkt. #16, Ex 5 at 14-15.)  A writ of habeas corpus is available under 28 U.S.C. §

2254(a) only on the basis of some transgression of federal law binding on the state

REPORT AND RECOMMENDATION
Page - 6

courts. *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).  It is unavailable for alleged error in the interpretation or application of state law. *Id.*  Thus, because petitioner had no federal constitutional right to a unanimous jury verdict and because assessment of this claim on the merits would involve interpretation and application of state law, this Court concludes that petitioner is not entitled to federal habeas relief.

## VI.  CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's federal habeas petition be DENIED, and that this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 13th day of October, 2006.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 7